# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdirizak Mohamed A., <br><br> Petitioner, <br><br> v. <br><br> Joel Brott, Sheriff of Sherburne County; Kirstjen Nielsen, Secretary of the Department of Homeland Security; Jeff Sessions, Attorney General; Peter Berg, Field Office Director of ICE; Thomas Homan, Director of ICE. <br><br> Respondents. | Case No. 18-cv-3063 (ECT/HB) <br><br><br> **REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on the Abdirizak A.'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. [Doc. No. 1]. Petitioner has been detained without bond, pending removal by United States Immigration and Customs Enforcement ("ICE"), since December 21, 2017. Petitioner argues that his lengthy detention without a bond hearing is unreasonable and violates his right to due process, as well as his rights under the Eighth Amendment. (Pet. 16.) He therefore seeks a writ of habeas corpus securing his immediate release, or, failing that, a bond hearing before an immigration judge ("IJ"). For the reasons that follow, the Court recommends that the Petition be granted in part.

1

I.   **Background**

   A.   **Petitioner's Citizenship and Immigration Status**

Petitioner is a citizen and national of Somalia who entered the United States as a refugee in July 2000. (Pet. Ex. 1 [Doc. No. 1-2 at 4].) On February 1, 2010, Petitioner's immigration status was adjusted to lawful permanent resident. (*Id.*)

   B.   **Petitioner's Criminal History**

On January 26, 2005 Petitioner pleaded guilty to two counts of Fifth Degree Possession of a Controlled Substance for offenses that occurred in 2003 and 2004. (Pryd Decl. ¶¶ 5–6 [Doc. No. 7].) For the two offenses he was sentenced to six days in custody and three years' probation. (*Id.*)

On March 17, 2016 Petitioner again pleaded guilty to Fifth Degree Possession of a Controlled Substance, this time for an offense that occurred in 2015. (*Id.* ¶ 7.) He was then sentenced to three days in custody and five years' probation. (*Id.*)

   C.   **The Removal Proceedings**

Immigration officials commenced removal proceedings against Petitioner and took him into custody on March 8, 2017. (*Id.* ¶ 9.) Immigration officials served Petitioner with a Notice to Appear, charging him as removable under 8 U.S.C. § 1227(a)(2)(B)(i) as an alien who had been convicted of an offense involving controlled substances. (*Id.*)

On April 11, 2017 an IJ terminated the removal proceedings against Petitioner, finding that the Minnesota controlled substance statute under which Petitioner was convicted did not satisfy the criteria of the removal statute. (*Id.* ¶ 11.) Petitioner was released from custody on March 31, 2017. (*Id.* ¶ 12.) The Department of Homeland

Security ("DHS") appealed the order for release and on September 5, 2017 the Board of Immigration Appeals ("BIA") reversed that decision. (*Id.* ¶ 13.) Not long after, Petitioner fled the United States to Canada. (*Id.* ¶ 15.) He was returned to the United States by Canadian immigration officials on December 21, 2017, and immediately detained. (*Id.*) On January 19, 2018 the BIA vacated the IJ's decision to terminate Petitioner's removal and remanded the case for a hearing before an IJ. (*Id.* ¶ 16.)

On February 3, 2018, Petitioner filed applications for various forms of relief from removal. (*Id.* ¶ 17.) All were denied except Petitioner's application for asylum, which the IJ granted on August 6, 2018. (*Id.* ¶ 20.)

Petitioner filed the instant Petition on October 31, 2018, and Respondents answered on December 4, 2018. [Doc. No. 6.] DHS subsequently appealed the IJ's decision. On January 24, 2019, the BIA reversed and remanded the case to the IJ for consideration of Petitioner's claim for relief under the Convention Against Torture ("CAT"). (Pryd Supp. Decl. ¶ 4 [Doc. No. 8].) On May 6, 2019, the IJ denied Petitioner's application for relief and Petitioner appealed the decision to the BIA. (*Id.* ¶ 5.) That appeal is still pending. (*Id.* ¶ 6).

**II.    Analysis**

    **A. Review of Detention under Habeas Corpus**

A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release. *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). The right to petition for habeas relief is a

foundational legal principle in the American system, *see* U.S. Const. art. 1 § 9, and has been recognized as "an integral part of our common-law heritage." *Preiser*, 411 U.S. at 485.  Relevant here, 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detentions, but a court's jurisdiction to do so is limited.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).  This Court may not review a discretionary decision made by immigration authorities, such as the decision to order that a noncitizen be removed to another country.  It may, however, review immigration-related detentions to determine if they comport with the demands of the Constitution.  *Zadvydas*, 533 U.S. at 688.  Accordingly, the Court's task is not to second-guess decisions made within the discretion of an immigration authority, but to assess the constitutional permissibility of the detention itself.  *See Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

Under 8 U.S.C. § 1226(c), the government is required to detain aliens who have committed specific crimes during their removal proceedings. Detaining removable aliens pursuant to 8 U.S.C. § 1226(c) for the "brief period necessary" for removal proceedings does not violate the Due Process Clause. *Demore*, 538 U.S. at 513. In *Demore*, the Supreme Court reversed a decision by the Ninth Circuit Court of Appeals that found § 1226(c) to be unconstitutional on its face because it authorized detention but provided no mechanism to challenge the basis for detention.  The Supreme Court affirmed the legality of the petitioner's six-month detention under § 1226(c), finding that his detention was reasonably related to removal and was for a short period of time.  538 U.S. at 526–

4

31. The Court noted that the Due Process Clause does not require the government to employ the least burdensome means when removing deportable aliens and that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 528, 531.  In addition, the Court emphasized that detentions pending removal proceedings under § 1226(c) do not raise the same constitutional concerns as § 1231 post-final-removal-order detentions because the former typically last for a much shorter period of time.  *Id.* at 530 (noting detentions under § 1226(c) last "roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal").  Thus, the majority held, the petitioner's six-month detention to secure his attendance at removal proceedings did not offend the Constitution. The majority declined to comment on whether a longer detention under § 1226(c) would raise constitutional concerns;  however, Justice Kennedy noted in his concurrence that "were there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."  *Id.* at 532–33 (Kennedy, J., concurring).

Interpreting *Zadvydas* and *Demore*, several federal courts of appeals—citing the canon of constitutional avoidance—construed § 1226(c) to include a reasonableness limitation on the length of time that an alien could be detained.  *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir.

5

2016), *vacated*, *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *overruled by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. granted*, *vacated*, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

In the wake of these decisions, the Supreme Court revisited the constitutionality of detentions under § 1226(c) in 2018 and rejected the analysis of the various courts in the above decisions. *Jennings,* 138 S. Ct. at 836. *Jennings* involved a class of non-citizens detained by immigration authorities under § 1226(c) and other detention statutes for periods lasting longer than six months. *Id.* at 838. The class had sought and obtained from the district court an injunction requiring immigration authorities to hold individualized bond hearings for each class member to assess whether the government was justified in continuing their detention. *Id.* Applying the constitutional avoidance doctrine and relying on the reasoning of *Zadvydas*, the Ninth Circuit had interpreted § 1226(c) to contain an implicit six-month time limit on the length of mandatory detention and upheld the requirement that detainees be provided individualized bond hearings after six months of detention. *Id.* at 842, 846.

The Supreme Court reversed, finding the Ninth Circuit misapplied the constitutional avoidance doctrine. *Id.* at 842. The Court noted that § 1226(c) was clear on its face that persons detained under the statute could only be released for witness-protection purposes. *Id.* at 846. Therefore, the constitutional avoidance doctrine could not be used to reinterpret the statute to impose a six-month time limit on mandatory detentions. *Id.* at 842 (explaining the "canon of constitutional avoidance comes into play

6

only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction."). Without commenting on the constitutionality of the detentions at issue in the lawsuit, the Court remanded the case for further consideration. In doing so, the Court determined that a six-month *per se* rule of reasonableness was not supported by the text of § 1226(c), but stopped short of assessing whether and to what extent a prolonged detention under § 1226(c) would exceed constitutional bounds. *Id.* at 847.

Thus, the constitutionality of prolonged detentions under § 1226(c) remains an open question. Various circuit courts of appeals have wrestled with that question. Noting that some extended detentions under § 1226(c) could raise a "serious risk" of violating the due process rights of detainees, the Third Circuit held that § 1226(c) only "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011). Similarly, the Sixth Circuit held that § 1226(c) authorizes the government to "detain *prima facie* removable aliens for a time reasonably required to complete removal proceedings in a timely manner," but that habeas relief may be warranted if the "process takes an unreasonably long time." *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003). Both courts declined to adopt a bright-line time limitation, finding that the reasonableness of a detention is a product of the particular facts of a case and the extent to which a detention justifiably serves the goals of the statute. *Id.* at 271; *Diop*, 656 F.3d at 233. Though decided before *Jennings*, the fact-specific approach utilized in these cases

appears consistent with the Supreme Court's analysis in *Jennings*.

The Eighth Circuit has not commented on the constitutionality of prolonged detentions under § 1226(c) after *Jennings*. But several courts in this District have addressed due process challenges to prolonged detention under § 1226(c) through careful examination of the facts of the case to determine whether the length of the detention was reasonable. *See, e.g.*, *Muse v. Sessions,* No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018); *Ahmed v. Sessions*, No. 18-cv-0438 (JRT/HB), R. & R. at 12–17 (D. Minn. May 2, 2018), *dismissed per stipulation*. In each of those cases, based on the specific facts and circumstances of the case, the court determined the length of the pre-removal detention was unreasonable. *Muse,* 2018 WL 4466052, at *4–6; *Mohamed*, 2018 WL 2392205, at *5–6; *Ahmed*, No. 18-cv-0438 (JRT/HB), R. & R. at 16.

**B. Petitioner's Detention**

Here, Petitioner challenges his detention as violating due process[1] because it has

---

[1] Petitioner also asserts that his incarceration violates the Eighth Amendment. (Pet. 16.) The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Because the Court recommends that Petitioner be granted some relief on his Fifth Amendment claim—specifically, a bond hearing—and Petitioner has not shown he would be entitled to any more relief on his Eighth Amendment claim than on his Fifth Amendment claim, his Eighth Amendment claim is moot. *See Muse*, 2018 WL 4466052, at *1 n.1 (deeming Fourth Amendment claim moot where relief was granted on due process claim and the petitioner did not argue he would be entitled to more relief under the Fourth Amendment).

been prolonged unreasonably. The Due Process Clause of the Fifth Amendment requires that "no person shall . . . be deprived of life, liberty or property . . . without due process of law." U.S. Const. amend. V. Because the Fifth Amendment protects all "persons," citizens and noncitizens alike are protected by its provisions. *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). "Freedom from imprisonment . . . lies at the heart of the liberty that Clause protects," *Zadvydas*, 533 U.S. at 690, and "it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993).

In a recent decision from this District analyzing continued detention under § 1226(c), the Honorable Patrick J. Schiltz "follow[ed] the lead of virtually every court that has addressed the issue following *Jennings*—including two judges of this District—and [held] that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable." *Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB)(D. Minn. September 18, 2018) 2018 WL 4466052, at *3 (citations omitted). Courts utilizing this fact-specific inquiry have identified several factors that are particularly useful in identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Id.* (quoting *Diop*, 656 F.3d at 232). These factors are:

(1) the total length of detention to date, (2) the likely duration of future

9

detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (citing *Reid*, 819 F.3d at 500–01).[2]

In this case, Petitioner has been continuously detained since December 21, 2017—more than twenty months as of the date of this Report and Recommendation. (*Id.* ¶ 15.) Application of the relevant factors to the facts and circumstances in this case supports a conclusion that Petitioner's continued detention without an individualized bond hearing would violate due process. First, with respect to the length of detention, Petitioner has been detained for twenty months, which far exceeds the "brief" period assumed in *Demore*. "[C]ontinued detention without inquiry into its necessity becomes more and more suspect" as detention continues past the six-month time frame described in *Demore*. *Diop*, 656 F.3d at 234. Detentions less than half the length of Petitioner's have been found unreasonable. *Muse*, 2018 WL 4466052, at *4 (*citing Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *1, 7 (S.D.N.Y. May 23, 2018) (eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months); *Gordon v. Shanahan*, No. 15-261, 2015 WL 1176706, *3–4 (S.D.N.Y. March 13, 2015) (eight months)). The length of Petitioner's detention weighs in favor of granting relief.

---

[2] In a footnote, Judge Schiltz acknowledged that the First Circuit withdrew its decision in *Reid* following the Supreme Court's opinion in *Jennings*. *Muse*, 2018 WL 4466052, at *3 n.3. Judge Schiltz found, however, that the *Reid* factors established "a reasonable framework for balancing the due process interests at stake" even though they were "originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c). . . ," and even though the *Reid* decision was withdrawn. *Id.* (quotation and internal quotation marks omitted).

Second, courts consider how long the detention is likely to continue in the absence of judicial relief. *See Muse*, 2018 WL 4466052, at *5. In postulating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. *See id.* (citing *Ly*, 351 F.3d at 272) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."). Although it is not possible to predict when the BIA will rule, it is quite likely that the losing party will appeal to the Eighth Circuit Court of Appeals, and Petitioner's detention could be extended by another year or more. *See id.* This second factor also favors Petitioner.

Third, courts examine the conditions of the alien's detention. *See id.* Aliens detained under § 1226(c) are subject to civil detention, not criminal incarceration. *Id.* (citing *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* Petitioner is being detained at the Sherburne County Jail. While the record is not developed on this issue, Respondents have given this Court no reason to believe Petitioner is detained under conditions that are different from those of inmates who are serving criminal sentences or who are awaiting trial on criminal charges. Thus, this factor also appears to weigh in Petitioner's favor.

Fourth, courts consider the nature and extent of any delays in the removal proceedings caused by the alien. *See Muse*, 2018 WL 4466052, at *5. Respondents point out that Petitioner asked for one continuance, but that one continuance is hardly material,

11

given the total duration of Petitioner's detention. Consequently, this factor favors Petitioner.

Fifth, courts consider the nature and extent of the government's role in causing delay in the removal proceedings. *See id.* at *6. Here, although the DHS appealed the IJ's grant of asylum, it was within its rights to do so, and it has not engaged in any dilatory tactics. This factor therefore weighs in favor of Respondents.

Finally, courts consider whether the proceedings will end in a final removal order. *Id.* Higher likelihood of the alien's removal means a longer period of detention may be reasonable. *Id.* The Court finds this factor does not favor one party over the other. While the most recent decision in Petitioner's case—the IJ's denial of his application for relief under CAT—was unfavorable to Petitioner, he has timely appealed to the BIA. Neither party analyzes the merits of the arguments presented before the BIA, nor is this Court inclined to speculate about the likelihood of Petitioner's ultimate removal.

In sum, four factors weigh in Petitioner's favor, one weighs in Respondents' favor, and one favors neither party. Based on this analysis, the Court finds that the continued detention of Petitioner without an individualized bond hearing would violate his right to due process under the Fifth Amendment. A bond hearing at which the parties may present evidence and argument concerning whether Petitioner is a danger to the community or likely to flee "will protect both [Petitioner's] rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)." *See Muse*, 2018 WL 4466052 at *6.

### C.     Attorneys' Fees and Costs

Under the Equal Access to Justice Act,

> a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  The party requesting fees and expenses must submit an application to the Court within thirty days of final judgment.  28 U.S.C. § 2412(d)(1)(B).  Accordingly, Petitioner's request for an award of costs and fees is neither ripe nor properly submitted, and the Court makes no recommendation on this aspect of the petition at this time.

### III.   Recommendation

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 be **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. If the District Court adopts this Report and Recommendation, an immigration judge must provide Petitioner with a bond hearing within thirty days of the District Court's order.  At the bond hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or to prevent Petitioner from fleeing; and

2. Petitioner's request for immediate release should be denied.


Dated: September 12, 2019                *s/ Hildy Bowbeer*
                                                     HILDY BOWBEER
                                                     United States Magistrate Judge


## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).