UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Abdirizak Mohamed A.,

       Petitioner,

v.

Joel Brott, in his official capacity as the Sheriff of Sherburne County; Chad Wolf, in his official capacity as the Acting Secretary of the Department of Homeland Security; William Barr, in his official capacity as the Attorney General of the United States; Peter Berg in his official capacity as the Field Office Director of ICE Fort Snelling, Minnesota; Matthew Albence, in his official capacity as the Acting Director of Immigration and Customs Enforcement,

       Respondents.[1]

File No. 18-cv-3063 (ECT/HB)

**OPINION AND ORDER**

---

Vincent P. Martin, Martin Law LLC, Bloomington, MN, for Petitioner Abdirizak Mohamed A.

Ana H. Voss, Ann M. Bildtsen, and Gregory G. Brooker, United States Attorney's Office, Minneapolis, MN, for Respondents Joel Brott, Chad Wolf, William Barr, Peter Berg, and Matthew Albence.

---

[1] Acting Secretary of Homeland Security Chad Wolf is substituted for former Secretary of Homeland Security Kirstjen Nielsen, Attorney General William Barr is substituted for former Attorney General Jeff Sessions, and Acting Director of Immigration and Customs Enforcement Matthew Albence is substituted for former Acting Director of Immigration and Customs Enforcement Thomas Homan because a "[public] officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

Abdirizak Mohamed A. petitions for a writ of habeas corpus under 28 U.S.C. § 2241. Abdirizak is a removable alien who has been held in custody by Immigration and Customs Enforcement ("ICE") for more than 26 months pursuant to 8 U.S.C. § 1226(c). He alleges that his prolonged detention violates the Fifth Amendment's Due Process Clause and the Eighth Amendment's prohibition of excessive bail. Pet. at 16 [ECF No. 1]. Abdirizak seeks immediate release. *Id.* at 17, ¶ 2. Alternatively, he seeks a bond hearing before an immigration judge "within 30 days" of any decision on the merits of his petition. *Id.* at 17, ¶ 3. Magistrate Judge Hildy Bowbeer has issued a Report and Recommendation addressing Abdirizak's petition. ECF No. 9. Magistrate Judge Bowbeer recommends denying Abdirizak's request for immediate release and granting his request for a bond hearing within 30 days of the issuance of an order adopting the Report and Recommendation based on Abdirizak's Fifth Amendment Due Process claim. *Id.* at 13–14. Respondents object to the Report and Recommendation. Obj. [ECF No. 10]. They argue first that the Report and Recommendation applies an incorrect test to determine the legality of Abdirizak's detention. *Id.* at 2–9. Alternatively, Respondents argue that, properly applied, the (assertedly incorrect) test the Report and Recommendation adopts requires the denial of Abdirizak's petition. *Id.* at 9–13. On de novo review, 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), D. Minn. L.R. 72.2(b), the Report and Recommendation will be adopted. The law governing Abdirizak's petition is not settled. However, there is general agreement in this District and others that the test adopted by the Report and Recommendation is correct, and that test's application here warrants granting Abdirizak a bond hearing.

The facts leading to Abdirizak's removal proceedings are few and straightforward.[2] Abdirizak is a native and citizen of Somalia. Pet. at 3; Pryd First Decl. ¶ 4 [ECF No. 7]. He entered the United States as a refugee on July 28, 2000. Pet. at 3; Pryd First Decl. ¶ 4. He adjusted his status to that of a lawful permanent resident on or about February 1, 2010. Pryd First Decl. ¶ 4. (Abdirizak alleges in his petition that he "became a permanent resident on July 28, 2000," Petition at 3, but that seems like a clerical error because it is the same day he first arrived in the United States.) Abdirizak has a criminal history in Minnesota. On January 26, 2005, he pleaded guilty to fifth degree possession of a controlled substance for an offense that occurred on November 17, 2003. Pryd First Decl. ¶ 5. For this offense, Abdirizak was sentenced to three years' probation, a $6,000 fine, and was required to participate in drug and alcohol treatment. *Id.* Also on January 26, 2005, Abdirizak pleaded guilty to a second count of fifth degree possession of a controlled substance for an offense that occurred on October 13, 2004. *Id.* ¶ 6. For this offense, Abdirizak was sentenced to serve six days in custody, three years of probation, and to participate in drug and alcohol treatment. *Id.* On March 17, 2016, Abdirizak again pleaded guilty to fifth degree possession of a controlled substance for an October 4, 2015 offense. *Id.* ¶ 7. For this offense, Abdirizak was sentenced to serve three days in custody, five years of probation, and to participate in drug and alcohol treatment and to abstain from using drugs and alcohol. *Id.* Finally, on June 21, 2017, Abdirizak pleaded guilty to careless

---

[2] The facts are taken from the Petition and from declarations filed by Deportation Officer Richard Pryd [ECF Nos. 7, 8, 11]. Abdirizak does not dispute the facts or procedural history described in Officer Pryd's declarations.

driving in violation of Minnesota law for a March 6, 2017 offense. *Id.* ¶ 8. Abdirizak was charged originally with driving while intoxicated. *Id.* This offense violated his probation, and he was ordered to serve one year of probation and undergo chemical dependency evaluation and treatment. *Id.*

Abdirizak's removal proceedings have not followed a straight path. The proceedings began March 8, 2017. *Id.* ¶ 9. On that date, Abdirizak was served with a notice charging him with being removable under 8 U.S.C. § 1227(a)(2)(B)(i) for being convicted of a felony crime involving controlled substances, and he was taken into custody. *Id.* ¶¶ 9–10. However, after determining that Abdirizak's Minnesota controlled-substances convictions did not meet the removal statute's criteria, an immigration judge ordered Abdirizak released from custody on March 31, 2017, and later terminated his removal proceedings. *Id.* ¶¶ 11–12. Following an appeal by the Department of Homeland Security, the Board of Immigration Appeals ("BIA") issued a decision on September 5, 2017, reversing the immigration judge's custody order and ruling that Abdirizak was to be held without bond pending the issuance of a final administrative order in his removal proceedings. *Id.* ¶ 13. Abdirizak was ordered to report to immigration officials in November 2017 but did not because he had fled to Canada in October. *Id.* ¶¶ 14–15.[3] After learning of Abdirizak's citizenship status, Canadian immigration officials escorted him to the border at Pembina, North Dakota on December 21, 2017, where United States immigration officials took him into custody. *Id.* ¶ 15. On January 19, 2018, the BIA

---

[3] When Abdirizak fled, he left behind a wife and nine children. Petition at 5.

vacated the termination of Abdirizak's removal proceedings, finding that his Minnesota convictions satisfied 8 U.S.C. § 1227(a)(2)(B)(i), and sustained the charge of removability against him. *Id.* ¶ 16. On February 13, 2018, Abdirizak filed applications for cancellation of removal, asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *Id.* ¶¶ 17, 19. An immigration judge held a hearing on the application for cancellation of removal on March 29, 2018, and denied the application on May 17, 2018. *Id.* ¶ 18. An immigration judge held a hearing on Abdirizak's applications for asylum, withholding of removal, and relief under the CAT on July 2, 2018. *Id.* ¶ 19. In an order dated August 6, 2018, the immigration judge granted the application for asylum but denied all other relief. *Id.* ¶ 20. The Department of Homeland Security appealed the order granting Abdirizak's asylum application, and on January 24, 2019, the BIA reversed and remanded the case to the immigration judge for consideration of only Abdirizak's application for relief under the CAT. Pryd First Suppl. Decl. ¶ 4 [ECF No. 8]. On remand, the immigration judge issued an order denying the application for relief under the CAT on May 6, 2019, and Abdirizak appealed that order to the BIA on June 4. *Id.* ¶¶ 5–6. The BIA affirmed the immigration judge's decision and dismissed Abdirizak's appeal on October 31, 2019, and on November 19, 2019, Abdirizak appealed that order to the Eighth Circuit. Pryd Second Suppl. Decl. ¶¶ 5–6 [ECF No. 11]. Three days later, on November 22, Abdirizak filed with the Eighth Circuit a motion for stay of removal. *Id.* ¶ 7. The Eighth Circuit issued a temporary stay on November 27, 2019. *Id.* ¶ 8. The United States filed a response to the motion for stay of removal on December 2. *Id.* ¶ 9. After receiving an extension of time, Abdirizak filed his merits brief and addendum with the Eighth Circuit

in February 2020. *Id.* ¶¶ 10–11. The United States' responsive merits brief is due in late March. *Id.* ¶ 12.

The law governing Abdirizak's habeas petition is not settled in one important respect: the rule or rules to apply to judge whether the length of his detention violates the Fifth Amendment's Due Process Clause. Respondents agree that the Due Process Clause imposes limits on detentions like Abdirizak's. Obj. at 7 ("The Respondents agree that in extraordinary cases, the writ of habeas corpus is an appropriate safety valve to protect an individual's due-process rights, but the Respondents respectfully disagree . . . that this is such an extraordinary case.") The basic problem is that 8 U.S.C. § 1226(c) requires Abdirizak to be "detained pending a decision on whether [he] is to be removed from the United States," 8 U.S.C. § 1226(a), but the statute establishes no limit on the duration an alien in removal proceedings may be detained, *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).[4] Addressing a facial due-process challenge to § 1226(c), the Supreme Court has held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that [removable aliens] be detained for the *brief period* necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 513 (2003) (emphasis added). Though *Demore* refers several times to the propriety of detention under § 1226(c)

---

[4] Section 1226(c)(2) authorizes the release of an alien detained under § 1226(c) if the Attorney General decides that release "is necessary to provide protection to a witness" or another similarly-situated individual "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." These circumstances are not present here.

for a "brief" or "limited time," *e.g.*, *id.* at 513, 529 n.12, it does not define these terms or suggest what facts, if any, might prompt a determination that a § 1226(c) detention exceeds these limits in a way that violates the Due Process Clause, *see generally id*. More recently, the Supreme Court overruled a Ninth Circuit decision that relied on the constitutional-avoidance canon of statutory interpretation to hold that § 1226(c) imposes an implicit six-month time limit on an alien's detention and gives detained aliens a (statutory) right to a bond hearing after that point. *Jennings*, 138 S. Ct. 830. *Jennings* did not address an as-applied due-process challenge to a § 1226(c) detention but remanded the case to the Ninth Circuit for consideration of that issue, among others. *Id.* at 851.

The Report and Recommendation, following a persuasive decision issued by District Judge Patrick J. Schiltz, applied a six-factor test to adjudicate Abdirizak's petition and request for a bail hearing. Report and Recommendation at 9–12 (citing and quoting *Muse v. Sessions*, 409 F. Supp. 3d 707, 715 (2018) (Schiltz, J.)). The six factors applied in the Report and Recommendation and by Judge Schiltz in *Muse* are:

> (1) the total length of the detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* As Judge Schiltz noted in *Muse*, "virtually every court that has addressed the issue following *Jennings*—including two judges of this District [before Judge Schiltz]—[has held] that a due-process challenge to § 1226(c) detention must be resolved by closely

7

examining the facts of the particular case to determine whether the detention is reasonable." *Muse*, 409 F. Supp. 3d at 715 (citations omitted).

Respondents object to the application of this multi-factor test here and argue that the controlling question—one Respondents say the Report and Recommendation does not answer—is whether Abdirizak's detention "no longer serve[s] the purpose of 8 U.S.C. § 1226(c)." Obj. at 2. Respondents point out that the length of Abdirizak's detention "is directly proportional to the parties' exercise of their due-process rights in the immigration court" and assert that "[a] test effectively based on the duration of detention . . . was rejected by the Supreme Court in *Jennings*, and is inconsistent with the Supreme Court's decision in *Demore*[.]" *Id.* at 5–6. "Respondents agree that in extraordinary cases, the writ of habeas corpus is an appropriate safety valve to protect an individual's due process rights," but argue that Abdirizak's is not an extraordinary case because "[t]here is nothing in the record to suggest that immigration officials have delayed or belabored [his] removal proceedings to incarcerate him for some nefarious purpose." *Id.* at 7.

Here, the factors adopted and applied in the Report and Recommendation and *Muse* will be applied to judge whether the length of Abdirizak's detention without a bail hearing violates the Fifth Amendment's Due Process Clause. If an as-applied due-process challenge to a § 1226(c) detention may be brought—and Respondents concede it may—then it is necessary to scrutinize the facts of a removable alien's detention. Respondents' argument that the controlling question should be whether a detention "no longer serve[s] the purpose of 8 U.S.C. § 1226(c)," Obj. at 2, is valid. But, as Judge Schiltz explained in

8

*Muse*, that is the ultimate question to be answered at a bond hearing, if one is ordered. *See Muse*, 409 F. Supp. 3d at 715–718. The factors applied in the Report and Recommendation, in *Muse*, and in many other cases "guide [federal courts] in identifying the point at which 'continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a [bond] hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.'" *Id.* (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011)).[5] Respondents' argument that "[a] test effectively based on the duration of detention . . . was rejected by the Supreme Court in *Jennings*, and is inconsistent with the Supreme Court's decision in *Demore*," Obj. at 5–6, seems to read too much into those cases. *Jennings* says it's incorrect to understand § 1226(c)—*i.e.*, the statute itself—to require periodic bond hearings. 138 S. Ct. at 842, 846–47. *Jennings* does not say either that a § 1226(c) detention cannot ever be long enough to raise due process concerns or that the length of a detention is irrelevant to a due process challenge. *Demore* says that mandatory detention under § 1226(c) is facially constitutional, but that holding cannot be separated from *Demore*'s repeated, obvious references to the "brief" and "very limited" duration of most § 1226(c) detentions. *Demore*, 538 U.S. at 513, 529 n.12. As noted earlier, it is true that *Demore* does not define what it means by a "brief" or "very limited" duration or suggest

---

[5] Though *Jennings* overruled *Diop*'s interpretation of § 1226(c) to "contain[] an implicit limitation of reasonableness" on the length of a detention, *Diop*, 656 F.3d at 235, *Diop*'s use of various factors and its description of their purpose remain persuasive in a constitutional due-process challenge to a § 1226(c) detention. *See generally id.*

9

what facts, if any, might prompt a determination that a § 1226(c) detention exceeds these limits in a way that violates due process, but saying it is "inconsistent" with *Demore* to consider a § 1226(c) detention's length as part of a due-process challenge goes too far. Finally, there is an obvious intra-district trend to apply factors identical to those applied in the Report and Recommendation and *Muse* to evaluate a due-process challenge to a § 1226(c) detention. *See*, *e.g.*, *Jeremiah O.A.N. v. Barr*, No. 19-cv-1076 (DSD/DTS), 2019 WL 6879520, at *3–4 (D. Minn. Nov. 26, 2019), *report and recommendation adopted*, 2019 WL 6874681 (D. Minn. Dec. 19, 2019); *Tua Mene Lebie B. v. Barr*, No. 19-cv-2177 (JNE/HB), 2019 WL 5715703, at *2–5 (D. Minn. Nov. 5, 2019); *Abshir H.A. v. Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719414, at *2–3 (D. Minn. Aug. 7, 2019); *Omar M. v. Barr*, No. 18-cv-2646 (JNE/ECW), 2019 WL 2755937, at *1–2 (D. Minn. July 2, 2019); and *Mohamed A. v. Neilsen*, No. 19-cv-49 (ECT/ECW), 2019 WL 2396761, at *4 (D. Minn. May 16, 2019) ("Many courts in this District have followed the *Muse* court's approach to determining when an alien detained under § 1226(c) is entitled to a bond hearing to prevent a possible violation of Petitioner's due process rights."), *report and recommendation not accepted as moot*, 2019 WL 2395408 (D. Minn. June 6, 2019). There is no good reason to buck this trend.

Here, the six factors on balance favor granting Abdirizak's request for a bond hearing. The length of Abdirizak's detention to date is more than 26 months, and that is a long time. Federal courts applying this factor have found routinely that shorter detentions favor granting relief. *Muse*, 409 F. Supp. 3d at 716 ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.")

(collecting cases). Respondents do not cite, and research has not identified, any case addressing a detention of this duration in which a bond hearing was denied. Respondents' observation that this time was "necessary and used only to adjudicate his claims," Obj. at 10, is true, but the same could be said to one degree or another in every case challenging a § 1226(c) detention.[6] The likely duration of future detention also favors ordering a bond hearing. It is not possible to know how long the temporary stay of removal will remain in effect, when a decision will be issued on Abdirizak's Eighth Circuit appeal, or the duration of subsequent proceedings, if any. Many circuit court appeals take more than several months to resolve. Abdirizak, Respondents concede, has been detained in "criminal correctional facilities," Obj. at 11, and that tilts in favor of ordering a bond hearing. Respondents argue that this factor should not be considered because "Congress was well aware that immigration officials would be detaining noncitizens subject to mandatory detention under Section 1226(c) in some type of secure facility." *Id.* No doubt that's true, but it seems beside the point. The purpose of this factor is not to ask whether a petitioner is detained in a secure facility—that answer would always be "yes"—but instead to examine what type of facility holds the petitioner and what conditions the petitioner encounters there. If the conditions of confinement are more like those one would expect

---

[6] Respondents justifiably observe that a § 1226(c) detention's length depends on the detainee's and government's exercise of their due-process rights—*i.e.*, more process takes more time. Obj. at 5. But for *Demore*'s obvious reliance on the understanding that § 1226(c) detentions are of "brief" and "very limited" duration, this observation might support an argument that, so long as due process is underway, the length of a § 1226(c) detention cannot justify the need for a bond hearing, and a due-process challenge would have to be adjudicated by reference to other factors.

11

to encounter in a criminal as opposed to civil confinement scenario, then the factor weighs in favor of ordering a bond hearing. Here, the conditions of Abdirizak's confinement, Respondents concede, are criminal in nature. As in *Muse*, he is "in a county jail alongside inmates who are serving criminal sentences." 409 F. Supp. 3d at 717. Neither Abdirizak nor Respondents have caused delays in the removal proceedings. As Respondents fairly describe things: "There is nothing in the record to suggest that immigration officials have delayed or belabored [Abdirizak's] removal proceedings to incarcerate him for some nefarious purpose." Obj. at 7. The record lacks information that might justify a reasonable prediction one way or the other regarding the likelihood that proceedings will result in a final order of removal.

*

Regarding Abdirizak's due-process claim, the length of his detention, the probable duration of future proceedings, and the conditions of his detention heavily favor a bond hearing. The other factors considered are neutral or do not tilt so heavily the other way as to justify a different result. Abdirizak did not object to that part of the Report and Recommendation rejecting his request for immediate release, nor did he file a brief in opposition to Respondents' objections, so there is no basis to revisit this aspect of the Report and Recommendation. The disposition of Abdirizak's due-process claim obviates any need to consider his Eighth Amendment excessive-bail claim. Abdirizak's request for an award of costs and reasonable attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, Pet. at 17, is not properly submitted and cannot be considered at this time.

12

**ORDER**

Therefore, based upon all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. Respondents' Objection [ECF No. 10] is **OVERRULED**;

2. The Report and Recommendation [ECF No. 9] is **ACCEPTED**;

3. Petitioner's request for immediate release is **DENIED**; and

4. The Petition for Writ of Habeas Corpus [ECF No. 1] is **GRANTED IN PART**. An immigration judge must provide Petitioner with a bond hearing within thirty days of the entry of this Order. At this hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or prevent Petitioner from fleeing.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 5, 2020                s/ Eric C. Tostrud
                                    Eric C. Tostrud
                                    United States District Court